Good morning. May it please the court, my name is Mary Pogalis. I'm here representing the petitioner-appellant Joaquin Padin on his appeal of the denial of his habeas petition by the district court. He was a state court defendant convicted of murder. Because the central issue at trial, and it continues to be factually at least, the central issue here is identity. Who killed George Freyberg? Not whether he was murdered, but who did it? The issue before the court of appeal that you need to review also is whether it made reasonable factual findings on concerning the evidence that was offered to support proof of identity. Well, you know, I guess from the, the kite is obviously central to all of this, correct? The kite is very central. And, you know, and I think that your argument that he wasn't, they didn't know who, they didn't use Padin in there, it would appear from the evidence that they said Wok, and there was testimony in the trial that Wok was Padin. So I think you make that link. But the question that I have, because you're dealing with the Bruton and then the Richardson, I guess March B. Richardson area of the law, can you direct me to any particular statement in the kite that indicates that Padin participated in the murder? You know, if you're asking for, I can point to nothing in the kite where Mr. Bryden says Wok killed or helped me kill George Freyberg. That is not there. But I think that it challenges, I mean, it is, it's absurd, in my opinion, to argue that the kite taken as a whole, and with the inclusion of Mr. Padin's name and references to him as he and him and whatever throughout it, does not clearly implicate him in the murder. The subject of the kite was the murder. There is no question. Well, but it has to be direct, doesn't it, under our case law? The district court or the trial court itself made a finding. The court of appeal itself made a finding, that the kite clearly goes to the identity of the killers. I think that's a factual finding even the court of appeal made. It's inescapable, I believe, from the context. I would point out specifically at my excerpt of Record 266, which is in the midst of the kite, the Exhibit 155. It begins at excerpts of Record 256, but I'm reading now from 266. And, of course, I cite in my brief to many of the references that certainly suggest in the admissibility foundation alone was this was in response to the informants seeking information about the murder. That was the evidentiary foundation that even allowed this to come in.  I guess I didn't understand the question, your answer to Judge Callahan's question regarding Richardson v. Marsh. What is your position on the issue of whether the admission has to directly implicate the defendant? Directly implicate, I think, means two things. First, that the subject was the murder, and secondly, that the hearsay evidence here, the inadmissible evidence, links him to that. Now, if this kite did not implicate or identify killers, it was completely irrelevant to this case. It should never have gone into evidence at all. Clearly, it was relevant. That was the prosecutor's rebuttal argument. That was the purpose why it went in after a hung jury that almost acquitted both of these defendants. It came in because it proved who killed this man, if you believed it. And if you did not, going back to 266 and in response to that question, Mr. Bryden says there in the kite, keep in mind, I'm thinking, there's a murder investigation going full tilt, like ones I've seen down south where the cops have pulled out all the stops. I'm waiting for every phone call from the ranch to have the door kicked in. There's a murder investigation going on. We already know that this was in response to Mr. Vandenvoort's solicitation of information about this murder, and it's corroborated within the context, not just here, but throughout. This kite addresses the murder and who was involved in it, and Joaquin Padin is included throughout numerous, numerous times. If you include all the he's and his and theirs, we're probably talking 20, 25 times. It is disingenuous for the prosecution to have argued and to continue to argue on appeal that this does not identify him as a killer when the prosecutor argued that to the jury. The prosecutor knew what it was in for. I know what it was in for. I was a prosecutor for years and years. This came in because there had been a hung jury. They didn't want to take any chances. This was to prove the guilt of both. Was the jury that hung as to both? I'm sorry? Was the jury hung as to both? Yes. Yeah. Yes. And this is a statement of the co-defendant? Yes. And it was the only new evidence. So not Mr. Padin basically stands convicted on the testimony of the psychopath I don't think anyone argues otherwise, a man without a conscience, and on evidence that because of who he was and that he was an accomplice was presumptively unreliable. The jury had to kick it out when they looked to see if there was corroboration. The court of appeal had to kick it out when they looked to see if there was corroboration. And the only corroboration they find is for the murder. There is nothing, nothing in this record to corroborate testimony or evidence that the identity of Mr. Padin is a killer, except this kite. And even though the jury was told. But that's in Vanderbort's wife. No. She's another accomplice. The jury was instructed, and the law is an accomplice cannot corroborate an accomplice. Inherently unreliable testimony cannot corroborate inherently unreliable testimony. It has to be independent of a participant to the crime. What was the limiting instruction within the jury? The limiting instruction in the midst of deliberations was that they could not consider it as to Mr. Padin. I acknowledge that. But I also point out to the Court that there are Supreme Court decisions that say you can do that, but there are cases where it makes no difference and we're not going to pretend it makes a difference. And here it makes no difference. The jury heard all this, was well into deliberations. This was devastating, this piece of evidence. I think that's clear. And it made all the difference in the world. It should never have come in. If it came in, it should have been Mr. Briden being tried alone. Having come in, it needed to be completely sanitized. As to Mr. Padin, it was not. It was clearly incriminating. Its subject was clearly this murder. Was there an inquiry to the purpose of the proffer of evidence at the time it was made? I'm sorry? Was there an inquiry by the district court as to the purpose of the proffer of evidence at the time it was made? Yes. And early on in the amnesty motions, the prosecutor said, oh, this is only as to Mr. Briden. We're not even going to pretend to apply it to Mr. Padin. And then she did. And then proceeded to argue that it did. That it did, directly. That it was, in fact, she used the word devastating. And that it identified him as a stone-cold killer. So I would like to reserve my last two minutes. Thank you. Good morning. May it please the Court. I'm Jill Thayer. I'm representing Respondent. The issue in this case is whether it was objectively unreasonable for the California Court of Appeal to determine that the kite didn't directly implicate Mr. Padin in Freiberg's murder. All right. Now, let's assume that that is, in fact, the issue. On what basis, then, does the prosecution argue that their trial court conduct was not proof of the direct implication of this defendant? Because the prosecution argued, we are told from the briefs, absent record review on my part, I'm told that the argument was made, this identifies this defendant as the cold-blooded killer of the victim. Well, the argument was not. It was not that clearly directing the kite, directing the jury to consider the kite in evidence against Mr. Padin. Well, what did the prosecutor exactly say? Didn't the prosecutor say something like this is devastating evidence that they're stone-cold killers or something? Well, it also said she had this list up. And so it's sort of hard to tell because some demonstrative evidence listing the phone call that Mr. Vandewort made to Mr. Padin. There was a series of things. And it was also, she was discussing both defendants. But this statement is used as corroboration, right? Against Mr. Bryden. Against Bryden, because they were tried together. And the trial court did make it very clear and said, look, these are two separate trials, what's in evidence against one isn't necessarily evidence against the other. Do I understand that the trial court did that after an objection was made to the prosecutor's statements about it? It made it in the beginning. It made it after objections. And then there was a note. The jury sent a note out, too, and asked if it was evidence against Padin. Yes. And the court said no. Very clearly. Well, but the jury, I guess, you know, what we think is clear sometimes wasn't quite as clear to the jurors. Trust me, I look at these instructions. I don't know how juries figure out any instructions. But really, when they asked their question, they said it in clear language. And the trial court responded very clearly back, no, no, you can't. So that's your safe harbor. Well, yes. Yeah. I mean, they asked. The trial court's instructions were clear. And contrary to what Petitioner is claiming now, there was no corroboration necessary of Vandervoort's testimony. He wasn't an accomplice. And Kathy Vandervoort, there's no evidence she was an accomplice at all. An accomplice has to be subject to prosecution for the exact same crime. And that's in the excerpts at 283 and also RT 2140, CT 561. Someone who just assents to or helps a crime without the intent is not an accomplice. And that's at RT 2141 to 2142 and CT 565. And the Petitioner, Mr. Bedeen, had to prove that Vandervoort was an accomplice. I guess I'm still up in the air on this question. Why would the jury send an inquiry to the trial court if this evidence can be used against Palin, if the exhibit, as you say, didn't do anything to identify Palin as the killer? Why would they ask, I mean, if it was so evident? And why would the prosecution argue what it argued if it was so evident? See my concern here? Right. Why are they saying can we use it at all? Well, because there is some connection up between that these guys knew each other. There is some discussions about how these guys are connected. And Bedeen testified that after Thanksgiving he spent no time with these guys. So I guess the kite could link them to each other. But after Thanksgiving and after the crime was committed. But if you want to fall into the Marsh v. Richardson exception, or, you know, if you don't, in Marsh v. Richardson it was redacted to eliminate any reference to the particular defendant. Here in the kite it did contain numerous references to Payden through Watt, which Watt can be linked as being Payden. So why wasn't the trial court compelled to exclude the kite since he was referenced in it? Well, okay, so this is like gray where it says me blank and a few other guys, he's the victim. Well, you're not maybe as strong as Marsh v. Richardson because you do have references to Payden in there. His name is in the kite. I mean, I'll admit that because Watt was his nickname, Payden's nickname. But it doesn't say anything about Payden killing Freiberg. And this kite was written while Mr. Bryden was in jail. He knew that these things were going back and forth. He's talking in code. He's making oblique references to these people. But he's not saying, I killed Freiberg. He's not saying anything about what he did, let alone what Mr. Payden did. So, yes, Payden's name is mentioned in the kite, but that's not the test of Richardson. The test in Richardson is whether he confessed. He confessed to a murder. And as in Richardson, the kite doesn't point to a defendant at all. It doesn't say any of these people murdered him. And part of the reason why is because he was in jail, and he was writing in code. So it has to directly implicate. Why wasn't Payden's name just simply redacted? Because it would have made no sense. It would have made no sense at all. And then it would have highlighted that we're taking out some name, and these people, well, the jury, these people were all connected. You know, Freiberg, Vanderbilt, they were all connected. So if it's saying something like, I want to smoke someone or I want to kill someone, and then there's a blank, I think it would make it even more of a highlight that we've just taken Payden's name out. And it would make it look even worse. That is a creative way to argue against redactment. I always thought that it was just the opposite, that if it was redacted and the jury was instructed, as I am familiar with those instructions, that you're not to consider or speculate as to why it was redacted or who might have been redacted. That it's better to put the name of the person in. I mean, wow. I'm really learning all kinds of stuff from visiting circuits. I think it's a great thing to do. That's what Gray says, though. That's exactly what Gray says. Gray is the me, blank, and a few other guys. And it says, you're saying blank, and obviously the defendant is the guy who is the blank. And by putting a blank in there, you're highlighting it. Is Gray in your briefs? Oh, yeah, that's the U.S. Supreme Court case. It's a more recent one. But they're saying you can highlight it. I mean, that's sort of what Gray is saying, is that it actually even highlights that his name has been removed. But in any case, the kite doesn't directly implicate either of them in the murder. And, you know, saying he's a bad guy or I want to kill, you know, Bryden saying I want to kill Padin doesn't mean Padin killed Freiberg. I mean, you have to make many logical jumps to get to that point. So if it doesn't implicate anyone, why would you be admitting it then? Well, it's linking them to each other. And it's harmful to Bryden because it says that he and Vandervoort know where the body is. I mean, certainly it doesn't have to be a confession in order to be admitted into evidence. And certainly this idea that if it logically bears on the issue, then it must directly implicate, that doesn't work at all. Because otherwise none of these statements would ever be admissible. The statement in Richardson wouldn't have been admissible because it was relevant, so it was admitted. That argument just subsumes Richardson, like the California Court of Appeal and the District Court of Appeal found. And the same with if it's relevant or has any relevance at all, because then it wouldn't be allowed in. Same with the bolstering credibility argument. Well, if that is a reason to exclude this, they'd never be admitted. And that isn't the law. That's not clearly established United States Supreme Court authority. And that's all that's relevant in this case. Okay. Thank you. Thank you. A couple of quick responses. I haven't much time, but if the – it seems to me the government should have borne the risk of what was going to happen if they put this in in this context. The defendant asked for a separate trial. Had he had a separate trial, the issue would have gone away. The kite could have gone into evidence against Mr. Bryden. They could have retried Mr. Padin on admissible evidence. They chose to try them together. They should bear the consequences of that decision, which turned out to be bad and unconstitutional. If the kite – if the jury did not use the kite, if they followed those instructions, we're in a terrible situation, because then what's left is Mr. Vandervoort. And, yes, he was an accomplice. It's not what he pled to or what the dealers, the government, offered him. It's whether there was evidence to suggest that he was a murderer. And there was – this evidence in this case was rife with that. That was the whole defense, that he was the person involved in this murder. It makes him an accomplice, and it makes his – you can't rely on Mr. Vandervoort's own description of what he did to decide. So that's not a valid argument. The general instruction to the jury, it was just general throughout the case, separate defendants, separate evidence, but never specific as to the kite until the midst of deliberations. I think the judge thought he had instructed on it, but he hadn't. Even the defense attorney thought that instruction had been given, but it hadn't, except in the most general terms. That's why the jury had to ask. As to the prosecutor's argument, I'm looking at page 7 of my opening brief, and I would refer the Court to pages 7 and 8, which give a detailed summary with exact quotes of the things that she said, such as, we're talking about murder, we're talking about Mr. Bryden's fear of Mr. Joaquin, to the point where he was thinking about shooting him. That's what this kite is about. This kite is very important. This kite is very important because it tells you that these were stone-cold killers. And she says, devastating, I mean to both Mr. Padin and Mr. Bryden. So the reference is to the kite, not to the cumulative evidence including this chart. It's to the kite. Thank you. The case just argued is submitted for decision.
judges: Lucero, Schroeder, Callahan